

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| JOHN DAVID TORRES, | § | No. 08-19-00209-CR |
|---|---|---|
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 4 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20180C01479) |

## CONCURRING OPINION

I concur in the judgment and add only a few words of explanation for why the evidence is sufficient to support the jury's verdict.

The State needed to prove four things to sustain this conviction: (1) that in contravention of a protective order issued under Chapter 7A of the Texas Code of Criminal Procedure; (2) Appellant intentionally or knowingly communicated; (3) with a protected person--here Sophia Avila; (4) in a threatening or harassing manner. TEX.PENAL CODE ANN. § 25.07(a)(2)(A). The only issue that is seriously debatable in my view is whether the State presented sufficient evidence for the last element.

The terms "threatening" and "harassing" as used in Penal Code are no strangers to the

courts.[1]  Section 25.07's use of the word "harassing" faced a constitutional overbreadth and vagueness challenge in *Wagner v. State*, 539 S.W.3d 298, 301 (Tex.Crim.App. 2018).  The court upheld the constitutionality of the statute but did so based in part on the plain meaning of the term "harassing."  The court consulted dictionary definitions to find that "a person communicates in a 'harassing manner' if the mode or method by which he communicates is such that it would persistently disturb, bother continually, or pester another person."  *Id.* at 309.  The phrase "necessarily requires multiple events of harassing communication."  *Id.*  The court concluded:

> In sum, pursuant to the common meanings of the statutory terms, a person of ordinary intelligence would understand that, if he has been enjoined from communicating in a harassing manner towards a particular person through one of the specified types of protective orders or bond conditions, then this statute prohibits him from intentionally or knowingly sending information or messages to, or speaking to, the protected person in a manner that would persistently disturb, bother continually, or pester another person.  This type of conduct may include persistent, frequent, or continual requests or interruptions that the actor engages in with the knowledge or intent that such conduct would disturb, bother, or pester a person whom a court has already determined is in need of greater protection than other people based on a risk that the defendant may harm the protected person in the future.

*Id.*

The statute, as applied to the defendant in *Wagner*, provided fair notice of the proscribed conduct when the defendant there made at least two phone calls to the protected person, and sent

---

[1] Our own opinion in *Ex parte Hinojos*, No. 08-17-00077-CR, 2018 WL 6629678, at *1 (Tex.App.--El Paso Dec. 19, 2018, pet ref'd) (not designated for publication) traces some of the case law examining the constitutionality of TEX.PENAL CODE ANN. § 42.07(a)(7) that criminalizes making repeated harassing electronic communications.  A slew of cases involving that same term are all now pending before the Texas Court of Criminal Appeals, with two courts of appeals finding section 42.07(a)(7) unconstitutional, *Ex parte Barton*, 586 S.W.3d 573 (Tex.App.--Fort Worth 2019, pet. granted) (op. on reh'g); *State v. Chen*, 615 S.W.3d 376 (Tex.App.--Houston [14th Dist.] 2020 pet. filed), and three courts upholding the constitutionality of the provision.  *Ex parte Sanders*, No. 07-18-00335-CR, 2019 WL 1576076 (Tex.App.--Amarillo Apr. 8, 2019, pet. granted) (mem. op., not designated for publication); *State v. Grohn*, 612 S.W.3d 78 (Tex.App.--Beaumont 2020, pet. filed); *Ex parte McDonald*, 606 S.W.3d 856 (Tex.App.--Austin 2020, pet. filed).

four lengthy emails. The protected person had specifically informed the defendant that she only wanted to communicate through email (as they were going through a divorce, some level of communication was necessary). And the substance of the emails strayed from what would have been necessary to wind up their divorce. *Id.* at 315. Rather, the defendant used the emails to chastise the protected person and to seek reconciliation.

The term threaten, while not defined in the Texas Penal Code, also has a plain meaning that can be gleaned from dictionary definitions. *See Olivas v. State*, 203 S.W.3d 341, 345 (Tex.Crim.App. 2006). In *Olivas*, the court looked to Webster's Dictionary that defined "threaten" to mean "to declare an intention of hurting or punishing" or "to be a menacing indication of (something dangerous, evil, etc.);" or "to express intention to inflict (injury, retaliation, etc.)[.]" *Id*., *citing* Noah Webster, Webster's New Twentieth Century Dictionary of the English Language Unabridged 1901 (2d ed.1983). Similarly, Black's Law Dictionary defines "threat" as: "A communicated intent to inflict harm or loss on another or on another's property . . . ." Black's Law Dictionary 1203 (7th ed. 2000). More recently, the same court provided a broader definition of "threat" noting that it includes "'[a]n expression of an intention to inflict something harmful' or '[a] declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course.'" *Ex parte Perry*, 483 S.W.3d 884, 905 (Tex.Crim.App. 2016), *quoting Threat,* Webster's II New College Dictionary (1999) and *Threat,* Random House Dictionary of the English Language (2d ed. [unabridged] 1987).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). And part of that measure must surely incorporate the meaning of terms

3

that are necessary to make the penal provision constitutional. Incorporating the meaning of the terms "harassing" and "threatening" I find sufficient evidence to support the conviction, but only as to the indictment's invocation of the term "harassing." Nothing in the substance of the communications include anything resembling a threat.

The majority sets out most of the relevant evidence, but I found Avila's testimony susceptible of inferring more than just the communications reflected by the three exhibits admitted at trial. Following the signing of the protective order in March of 2017, a person identified as Harry Lopez in early November messaged Avila to ask "Would it be ok if Chino talks to you? He's a mutual friend." "Chino" is Appellant's nickname. Significantly, Avila provided some testimony that "Harry Lopez" was actually Appellant:

> Q. And why do you think it was Mr. Lopez who -- I'm sorry. Why did you think it was the defendant, not a Harry Lopez, who's contacting you?
>
> A. Because he -- that's how -- he would message me and then he would take off pictures just so I would think --
>
> Q. You can go ahead and answer.
>
> A. Because he would always post pictures and request me, and then delete pictures so he knew I was, I guess, taking -- saving evidence for myself.

And during cross-examination, Avila again stated that Appellant would post a picture, and then delete it, suggesting that there were more communications than the few that the State introduced into evidence at trial. Avila also testified that she blocked Appellant on Facebook because in her words, "he wouldn't stop messaging me." After confirming that the communications were annoying and harassing, Avila repeated that there were "[s]everal incidents" that bothered her. She specifically referenced a message of November 30 on Appellant's Facebook board stating, "I love you, Sophia." She claims she was aware of those posts because Appellant would "request me

4

on Facebook, and I always look at who is requesting me, and I saw it,  And then he would take it off."

Also in November, Torres himself sent a message to Avila in Facebook messenger stating:

You're right, don't know why I felt so compelled to protect you and care about you didn't know it was 10 yrs already and when i look back on everything I know about you, I'll just consider it all a coincidence and if this is what you want from me[,] you got it, I Love You[,] Sophia Villanuvea [sic] [Avila's maiden name].

And on December 15, Appellant sent another message from his Facebook account to Avila's, asking "Can we talk..?"  Avila also testified that Appellant further tried to contact her after December 15 through additional messages.  She testified that this pattern of messaging was the same pattern that earlier led her to seek the protective order.

I recount this testimony because *Wagner* presupposes that a constitutionally permissible application of the statute requires "harassing manner" to equate to a pattern of communications that "persistently disturb, bother continually, or pester another person."  539 S.W.3d at 309.  And here, the record supports an inference that there were more than just the three exhibits that Avila was able to capture and print.  Accordingly, a reasonable jury could have concluded there was a pattern of communications that harassed a protected person.  Accordingly, I concur.


JEFF ALLEY, Justice

August 4, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

5