

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN DAVID TORRES, | § | No. 08-19-00209-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 4 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20180C01479) |

## **O P I N I O N**

A jury found John David Torres guilty of violating a protective order. The trial court assessed his punishment and sentenced him to 365 days in prison, probated for twenty-one months. Appellant challenges his conviction in four issues. We affirm.

## **BACKGROUND**

John David Torres and Sophia Avila have known one another since 2000, beginning with a nine-year period where they worked together at FedEx from 2000 to 2009. In 2017, Avila applied for a temporary protective order against Torres after a series of events where Torres attempted to contact her and members of her family and otherwise harassed her and made her feel uncomfortable.[1] After the temporary protective order was granted, Avila then applied for a more permanent

---

[1] Avila testified that Torres "wouldn't stop messaging [her]," took pictures of her in public and sent them to her, visited her father's gravesite, and contacted her sister-in-law in Oklahoma City.

protective order against Torres. That application was set for hearing on March 21, 2017, in the 65th District Court of El Paso County. The parties arrived for the hearing as scheduled but no hearing took place. Instead, Torres agreed to the terms of the protective order sought by Avila. The district court thus rendered an "Agreed Protective Order" (the Order) on that date.

Relevant to this case, the Order prohibited Torres from: (1) communicating directly with Avila, or a member of her family, in a threatening or harassing manner; (2) going within 200 yards of Avila's residence or place of employment; and (3) engaging in conduct specifically directed toward Avila or a member of her family that was "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass" the person. The Order stated that it was to be in effect for the duration of Avila's and Torres' lives. Torres was served with a copy of the Order in open court on the day it was signed, March 21, 2017, and the Order was signed by Torres (along with Torres' attorney, Avila, the trial court, and the Assistant County Attorney).

On November 3, 2017, Avila received a message through her personal Facebook account from an unknown individual purportedly named Harry Lopez. The message asked, "Would it be ok if Chino talks to you? He's a mutual friend." Avila testified that Torres used "Chino" as a nickname when they worked together and among their common friends. Later in November, Torres sent a direct message from his own Facebook account to Avila that stated:

> You're right, don't know why I felt so compelled to protect you and care about you didn't know it was 10 yrs already and when i look back on everything I know about you, I'll just consider it all a coincidence and if this is what you want from me[,] you got it, I Love You[,] Sophia Villanuvea [sic].[2]

Torres then posted the following on his own public Facebook page on November 30, 2017: "Can

---

[2] Avila testified "Villanueva" is her maiden name, which she used during the time she and Torres worked together for FedEx.

we please talk . . . [.]" Finally, on December 15 Torres sent another message from his Facebook account to Avila's, asking "Can we talk..?"

Avila reported these communications to the El Paso Police Department. Officer Patrick Pacheco was assigned to the case. After reviewing screenshots of the messages sent to Avila along with the Facebook posts, Officer Pacheco called Torres, who admitted he had sent the messages. By information, Torres was later charged with having violated a protective order issued on March 21, 2017.

Torres' trial commenced on July 22, 2019. The State presented the Order, testimony by Avila and Officer Pacheco, and screenshots of the above-mentioned communications and posts. The defense presented no case-in-chief. The jury found Torres guilty of the offense of violation of a protective order. Torres elected that the trial court assess punishment. The trial court assessed punishment at 365 days in the county jail, probated for a period of twenty-one months of community supervision. Torres filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

## ISSUES ON APPEAL

Torres raises four issues on appeal. First, he argues the evidence was legally insufficient for a rational juror to find that there was a valid protective order in place. Second, he argues the evidence was legally insufficient for a rational juror to find that he directly communicated with Avila. Third, he argues the evidence was legally insufficient for a rational juror to find that any communication were made in a threatening or harassing manner. Fourth, he argues the evidence was legally insufficient for a rational juror to find that any communication was intentionally or knowingly threatening or harassing.

We construe Torres' four issues as a legal sufficiency challenge to his conviction for violation of a protective order and address the issues as they arise within the framework of the elements that make up the offense.

## DISCUSSION

### A.  Standard of Review

The Fourteenth Amendment's guarantee of due process requires that every criminal conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* analysis, a reviewing court must consider all evidence in the light most favorable to the verdict, and in doing so, must determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95 (citing *Jackson*, 443 U.S. at 319).

In considering the evidence, we keep in mind the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We are not permitted to reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We treat circumstantial evidence as being as probative as direct evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Therefore, our task is to determine whether, based on the evidence and

reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the charged offense beyond a reasonable doubt. *Id*.

## B. Applicable Law

To support a conviction for violation of a protective order, the State must have proved that Torres (1) was in violation of a protective order issued under Chapter 7A of the Texas Code of Criminal Procedure; (2) intentionally or knowingly communicated directly; (3) with a protected individual; (4) in a threatening or harassing manner. *See* TEX. PENAL CODE ANN. § 25.07(a)(2)(A).

As to the first element, whether Torres was in violation of a protective order issued under Chapter 7A of the Texas Code of Criminal Procedure, a jury may consider the language of the protective order itself in determining who was subject to the order and under which statute the order was issued, among other things. *See Villarreal v. State*, 286 S.W.3d 321, 327-28 (Tex. Crim. App. 2009). As part of this element, the State was required to prove at trial that Torres was present at—or at least had notice of—the hearing where the Order was granted, and that he had knowledge of the Order's issuance at the time of the alleged violation. *See Harvey v. State*, 78 S.W.3d 368, 372-73 (Tex. Crim. App. 2002). The State was not required to prove, however, that Torres understood the Order's provisions. *See id*. at 373. We also note that *Harvey* does not stand for the proposition that the State was required to relitigate the substantive justification for the underlying protective order in its prosecution for a violation of that order. *Id*. The respondent's signature on a protective order is evidence that the respondent was present at the hearing, received a copy of the Order, and had knowledge of its issuance. *See Dunn v. State*, 497 S.W.3d 113, 115-16 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Wiley v. State*, 410 S.W.3d 313, 320 (Tex. Crim. App. 2013)).

5

Regarding the second element of the offense, whether Torres intentionally or knowingly communicated directly, a person acts intentionally when it is his conscious objective or desire to cause the result of his action. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). The word "communicate" is not defined in the Texas Penal Code. Words not specifically defined by the Legislature are to be understood according to their ordinary meaning and common usage. TEX. CODE CRIM. PROC. ANN. art. 3.01. "Communicate" is the verb form of the noun "communication," which is defined as the "interchange of messages or ideas by speech, writing, gestures, or conduct." BLACK'S LAW DICTIONARY (10th ed. 2014). As the State points out, other courts have adopted this meaning of the word within the context of section 25.07. *See, e.g., Epps v. State*, No. 06-18-00046-CR, 2019 WL 961510, at *2 (Tex. App.—Texarkana Feb. 28, 2019, no pet.) (mem. op., not designated for publication).

Torres does not challenge the third element, whether Avila was an individual protected by the Order. However, we note that courts have held that the presence of an individual's name on a protective order introduced at trial is sufficient evidence that the individual was protected under the order. *See, e.g., Diaz v. State*, 549 S.W.3d 896, 900 (Tex. App.—Amarillo 2018, no pet.).

The final element the State was required to prove was that Torres' direct communications toward Avila were made in a threatening or harassing manner. TEX. PENAL CODE ANN. § 25.07 (a)(2)(A). This element is inherently subjective, but courts have held that testimony by a protected individual that he or she felt harassed or threatened by attempts to communicate was evidence of harassing or threatening communication. *See Linares-Lainez v. State*, No. 01-17-00232-CR, 2018 WL 1161553, at *4-5 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, no pet.) (mem. op., not

6

designated for publication); *Scott v. State*, Nos. 05-95-01376-CR, 05-95-01377-CR, 05-95-01378-CR, 1997 WL 121222, at \*4 (Tex. App.—Dallas Mar. 19, 1997, no pet.) (not designated for publication). Even communication that purports to express affection, when unwanted by the recipient, can reasonably support a jury's conclusion that the victim was threatened or harassed. *See Olivas v. State*, 203 S.W.3d 341, 350 (Tex. Crim. App. 2006).

### C. Analysis

> **1. Whether there was legally sufficient evidence that Torres was in violation of a protective order issued under Chapter 7A of the Texas Code of Criminal Procedure.**

At trial, the State introduced a certified copy of the Order. The first paragraph of the Order states: "ON THE 21st day of March, 2017, came on to be heard the above styled and numbered Application for a Protective Order pursuant [to] Chapter 7A, Code of Criminal Procedure." John David Torres was listed in the style as the respondent, and he is clearly the subject of the Order, which prohibited him from communicating directly with Avila in a threatening or harassing manner, among other things. The Order also states that it would be in effect for the lives of both Torres and Avila.

The Order bears Torres' signature and further states that Torres was served with a copy of the Order in open court on the day it was signed. The Order states that Torres appeared at the hearing with his attorney of record. Additionally, Avila testified that Torres was present at the hearing, and—as the State points out—Torres has never disputed that he was present at the hearing or that he agreed to the Order.

To the extent that Torres argues on appeal that the State was required to establish the substantive justification for the underlying Order, we disagree. Nothing in Section 25.07 of the Texas

7

Penal Code requires the State to relitigate the events that led to the protective order being issued, and that requirement especially cannot be the case where the subject of a protective order avoided the presentation of evidence at the hearing by agreeing to the underlying order. *See Perez v. State*, No. 08-15-00253-CR, 2017 WL 1955338, at *4 (Tex. App.—El Paso May 11, 2017, pet. ref'd) (not designated for publication). Torres argues the Order was invalid because there was insufficient evidence to support the issuance of the Order, because no evidence was heard on Avila's application for protective order, and because he argues that a Chapter 7A protective order cannot be based on an agreement of the parties. Conversely, the State argues that Chapter 7A protective orders can be based on agreement of the parties.

While we agree that no part of Chapter 7A of the Code of Criminal Procedure prohibits agreed protective orders, we need not decide the issue, because to the extent Torres challenges the original justification—or continuing need—for a protective order, we agree with the State that such a challenge constitutes a collateral attack on the Order itself. *See id.*, at *3. We conclude that *even if* the Order was not justified for any one of the reasons Torres now complains of, in any case, such error would have made the Order voidable—not void—and Torres' remedy was a direct challenge of the Order, in accordance with the appropriate procedures and deadlines at the time of the Order's issuance. *See id.*, at *4. Instead, Torres agreed to the Order. A person cannot choose to avoid the presentation of evidence at a hearing on an application for a protective order by agreeing to the terms of that order, and then, at a much later date, avoid the consequences of violating the order based on a claim that the applicant never proved a justification for the order.

Here, the jury was presented with a procedurally valid protective order, issued pursuant to Chapter 7A of the Code of Criminal Procedure, which stated that Torres was notified of a hearing

8

on Avila's application, appeared at the hearing, agreed to the order, signed the order, and received a copy of it in open court. Viewing this evidence in the light most favorable to the jury's guilty verdict, the evidence was sufficient to establish the first element of violation of a protective order.

Torres' first issue is overruled.

2. **Whether there was legally sufficient evidence that Torres intentionally or knowingly communicated directly.**

Here, the State presented evidence in the form of screenshots of two electronic messages purportedly sent from Torres' Facebook account to Avila's in November or December of 2017. The screenshot of the messages that Avila alleges were sent directly to her by Torres from his Facebook account show only the first name "John" as the sender. However, Avila testified that the message was from Torres. Because John is Torres' first name, the jury could have made a reasonable inference that these messages came from Torres' account. *See Butler v. State*, 459 S.W.3d 595, 602 (Tex. Crim. App. 2015) (holding that a phone number or other identifying information, along with corroborating witness testimony, may "bridge the logical gap" and permit a proper inference that the purported author of an electronic communication actually sent the message). This inference is further supported by Officer Pacheco's testimony that Torres admitted to sending those two messages to Avila's Facebook account.

Viewing this evidence in the light most favorable to the verdict, this evidence was sufficient for a rational juror to find beyond a reasonable doubt that Torres intentionally or knowingly communicated directly with Avila. *See Diaz*, 549 S.W.3d at 900 (holding that evidence of Facebook messages to the protected individual constituted legally sufficient evidence of intentional or knowing direct communication); *Linares-Lainez*, 2018 WL 1161553, at *4-5 (holding that defendant's admission that he committed acts that violated a protective order was evidence tending to establish

9

a culpable state of mind); *see also Berge v. State*, No. 08-15-00263-CR, 2017 WL 2351093, at *5 (Tex. App.—El Paso May 31, 2017, no pet.) (not designated for publication) (holding that direct proof of a defendant's culpable mental state is rare and almost always depends on circumstantial evidence, which can be inferred from the acts, words, and conduct of the accused, as well as surrounding circumstances) (citations omitted).

Torres argues on appeal that there was no evidence that he communicated directly to Avila because "any communication was through Facebook, a third party, and was easily avoidable by anyone who [wished] to avoid a message . . . ." He further argues that Facebook is a public forum and Avila had the ability to "avert her eyes" to avoid his posts and messages. Torres posits that Avila could have avoided his communications by deactivating her Facebook account or not reading her messages, among other suggestions. Even recognizing that speech is a fundamental right and considering the principle that statutes burdening speech must be narrowly drawn and interpreted to avoid chilling more speech than necessary, we do not agree that the burden of avoiding threatening or harassing speech, in violation of a protective order, lies with the person protected by the order. *See Wagner v. State*, 539 S.W.3d 298, 301 (Tex. Crim. App. 2018) (rejecting argument that section 25.07's prohibition of communicating in a threatening or harassing manner violates constitutional protections).

Torres' second and fourth issues are overruled.

### 3. Whether there was legally sufficient evidence that Torres' communication was made with a protected individual.

Having established that there was legally sufficient evidence for a jury to have found that Torres intentionally or knowingly engaged in direct communication with Avila, we now address the related element of whether the State established that Avila was a protected individual under

10

the terms of the Order. Here, as mentioned above, the State presented the jury with the Order. In the Order, Avila was listed as the "Applicant" in the style, and explicitly referenced in bold, capitalized typeface throughout the paragraph listing Torres' prohibitions. The jury also heard Avila's testimony that she was the person who filed the application for the Order. Viewing this evidence in the light most favorable to the verdict, the evidence was sufficient to allow a rational juror to find beyond a reasonable doubt that Avila was an individual protected by a protective order issued pursuant to TEX. CODE CRIM. PROC. ANN. ch. 7A.

4. **Whether there was legally sufficient evidence that Torres' communication was made in a threatening or harassing manner.**

As used in section 25.07, the word "harassing" means to communicate "in a manner that would persistently disturb, bother continually, or pester another person." *Wagner*, 539 S.W.3d at 309. The Court of Criminal Appeals has also recently held that the definition of a "threat" includes "'[a]n expression of an intention to inflict something harmful' or '[a] declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course.'" *Ex parte Perry*, 483 S.W.3d 884, 905 (Tex. Crim. App. 2016) (quoting *threat*, Webster's II New College Dictionary (1999) and *threat*, Random House Dictionary of the English Language (2d ed. [unabridged] 1987)).

Here, the jury heard contextual evidence primarily from Avila that, over a period of years, Torres repeatedly reached out to her and her family members, enough that she felt compelled to obtain the Order in the first place. The jury also heard testimony and saw evidence that allowed for an inference that, despite the Agreed Order entered into by Torres, in November of 2017, he either created a Facebook account under the name Harry Lopez in order to contact Avila, or asked an individual named Harry Lopez to contact Avila on his behalf. The jury heard testimony and saw

11

evidence regarding two direct messages sent by Torres to Avila through Facebook in November or December of 2017. Although the first direct message from Torres seems to ultimately purport to end contact with Avila, the second one appears to be a subsequent attempt to re-open communication.

Avila testified numerous times at trial that she interpreted Torres' communications in November and December of 2017 as annoying and harassing. She testified that she was uncomfortable being in the same room with him for the purposes of the trial. The State presented further testimony from Officer Pacheco, who testified that he perceived that Avila felt harassed and threatened as a result of Torres' communication.

From this evidence, the jury could have made the inference that Torres repeatedly attempted to contact Avila after he signed the Agreed Order. Not only did Avila testify that she felt subjectively harassed by Torres' attempts to contact her, the Court of Criminal Appeals has held that evidence of a pattern of communications that "persistently disturb, bother continually, or pester another person" is sufficient to qualify as harassing under section 25.07. *Wagner*, 539 S.W.3d at 309. As a reviewing court, we may not re-weigh evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Azzam v. State*, No. 08-17-00137-CR, 2019 WL 457608, at *2 (Tex. App.—El Paso Feb. 6, 2019, no pet.) (not designated for publication). Viewing the evidence in the light most favorable to the verdict, the evidence was sufficient for a rational juror to find beyond a reasonable doubt that Torres' communications were made in a threatening or harassing manner.

Torres' third issue is overruled.

**D. Trial Court's Certification of Defendant's Right of Appeal**

As a final matter, we address the absence of Torres' actual signature on the Certification of Defendant's Right of Appeal. Our record includes a certification of Torres' right to appeal this case. We note, however, the certification does not bear Appellant's actual signature indicating he was informed of not only his right to direct appeal to this Court but also to petition the Texas Court of Criminal Appeals should he so desire. *See* TEX. R. APP. P. 25.2(d). Instead, the certification includes Appellant's typed name only on the line designated for his signature. We hold the certification is defective in its present form and has yet to be corrected by Appellant's attorney.

To remedy this defect this Court ORDERS Appellant's attorney, pursuant to TEX. R. APP. P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the deadlines applicable to his case. *See* TEX. R. APP. P. 48.4, 68; *see also Ex parte Wilson*, 956 S.W.2d 25, 26-27 (Tex. Crim. App. 1997) (holding that an appellate attorney has a duty to inform a defendant of "the fact that his conviction has been affirmed" and that "[the defendant] can pursue discretionary review on his own"). Communicating this information will protect Appellant's right to file a petition for discretionary review with the Court of Criminal Appeals, even though he does not necessarily have a constitutional right to appointed counsel in preparing such a petition. *See Ex parte Wilson*, 956 S.W.2d at 27. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX. R. APP. P. 48.4.

## CONCLUSION

In sum, we conclude that the State presented sufficient evidence to support each element of the offense of violating a protective order beyond a reasonable doubt. All of Torres' points of error are overruled and the trial court's judgment on the jury's verdict is affirmed.

13

GINA M. PALAFOX, Justice

August 4, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Alley, J., concurring

(Do Not Publish)