

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| R.M., | § | No. 08-15-00359-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court |
| MICHAEL SWEARINGEN, | § | of Brewster County, Texas |
| Appellee. | § | (TC# 2195) |

# **O P I N I O N**

R.M. appeals the trial court's termination of a protective order she received against Michael Swearingen. For the reasons that follow, we will reverse and render judgment reinstating the order.

## BACKGROUND

R.M. filed an application for a protective order in Brewster County against Swearingen on July 28, 2014, alleging that he had "engaged in conduct that constitutes family violence and sexual assault." The trial court issued the protective order on August 4, 2014, finding that R.M. and Swearingen were intimate partners, that there were reasonable grounds to believe Swearingen sexually assaulted R.M., and that Swearingen had committed family violence and that further family violence was likely to continue in the future. There is no evidence in the

record to show that order was ever appealed. On February 18, 2015, a Brewster County grand jury no-billed Swearingen on a sexual assault charge. It is undisputed that at all relevant times, Swearingen complied with the terms of the 2014 protective order.

On August 4, 2015, one year after the order was issued, Swearingen filed a Motion To Terminate Protective Order for Lack of Continuing Need. At a hearing on October 13, 2015,[1] Swearingen, an employee of the United States Border Patrol in the Alpine field office, testified that his employer had initiated an administrative disciplinary investigation against him after R.M. had made her allegations and obtained the protective order. Swearingen further testified that he wanted to apply for a transfer to a different field office. However, he maintained, the administrative investigation against him would prevent this transfer. Swearingen admitted that the Border Patrol did not have a formal policy to that effect, but Swearingen's co-worker testified that it was common knowledge that employees subject to pending administrative investigations could not transfer offices. Swearingen also produced a document from the employee's union stating that employees could not transfer if they were "the subject of alleged misconduct that may prevent the performance of the full scope of required duties." Swearingen argued that the protective order should be lifted in order to allow him to convince the Border Patrol to end its administrative investigation and allow him to transfer out of the city, though he conceded that lifting the order may not necessarily end the investigation against him.

R.M. testified that she would feel "very leery of [her] actions in town" if the protective order were lifted, and that if Swearingen showed up at her workplace, she would feel "[v]ery nervous, scared, wishing I wasn't there." She further stated that testifying at the hearing in and

---

[1] Following Swearingen's motion, the Brewster County Judge issued an order terminating the protective order on August 12, 2015, without notice to either party. Swearingen's counsel learned of the order first and then informed R.M., who timely moved both to extend post-judgment deadlines and for a new trial. The Brewster County Judge set aside the August 12 order, found that R.M. and her counsel did not learn of the order until September 22, 2015, granted a new trial, and then recused himself, appointing the Jeff Davis County Judge to preside over the new trial.

of itself made her feel "very nervous, very scared" and that her legs were trembling on the stand. After the incident between her and Swearingen, R.M. began counseling sessions. On cross-examination, R.M. admitted that she would feel less worried if Swearingen were not in town. On questioning by the court, R.M. stated that she would graduate from the local university in spring 2016, and that thereafter she planned on getting a firefighter certification and then remaining in Alpine for a couple of years until her fiancé graduated. On re-direct, R.M. testified that she was raised in Alpine and her family lives in Alpine.

Prior to rendering judgment, the court made the following remarks:

THE COURT: One of the things that disturbs me is I didn't – and I know I didn't hear the evidence that supported the ten-year protective order. That's a long time. Usually they're just for one year or two years, it seems to me, at the most.

The fact that this is a small town and we're all living in small communities means that there's always going to be a chance that you'll run into him. If he were gone, I can't help but think that that would take the pressure off you.

I'm going to lift the protective order. However, Mr. Swearingen, you need to know that I will be back to hear anything else if anything does arise, and it won't be pretty.

I can't tell you – if I lift the protective order, I can't tell you don't go where she works, don't go where she goes to school, don't do anything and to – if you're serious about applying for a job in a different place – I didn't hear any evidence that said that you had applied and had been rejected because of this. So I don't know if that – if there's something to keep you from applying right now, even were this protective order to stay in place.

. . .

I'm going to lift it today. It's been in effect for 14 months. But I'm telling you, if anything happens where you do not feel safe, contact your attorney and get something filed ASAP and I will be here to hear it.

The trial court then found that there was no continuing need for the protective order and issued a judgment terminating the order. R.M. appealed.

## DISCUSSION

The Court in this case will be among the first to interpret the limits of the Code of

3

Criminal Procedure's recently amended procedures dealing with protective orders requested and obtained by applicants alleging sexual assault. Specifically, we must determine when a protective order issued both on family violence grounds under the Family Code and sexual assault grounds under the Code of Criminal Procedure may be rescinded. This is apparently an issue of first impression. We review statutory construction issues *de novo*. *See In re J.L.J.*, 352 S.W.3d 536, 539 (Tex.App.--El Paso 2011, no pet.).

There are two statutory schemes governing protective orders relevant to this case: one is set by Title 4 of the Texas Family Code, and the other is set by Article 7A of the Texas Code of Criminal Procedure. Under the Texas Family Code, "[a] court shall render a protective order . . . if the court finds that family violence has occurred and is likely to occur in the future." TEX.FAM.CODE ANN. § 81.001 (West 2014). Family violence includes dating violence between people who either are or have been in a dating relationship. TEX.FAM.CODE ANN. § 71.004(3) (West Supp. 2015); *see also* TEX.FAM.CODE ANN. § 71.0021 (West Supp. 2015). The maximum amount of time that a Family Code protective order may last is two years, absent findings that the person to be bound by the order either caused serious bodily injury or else was previously the subject of two or more family violence protective orders brought by the same applicant. TEX.FAM.CODE ANN. §§ 85.025(a)-(a-1)(West Supp. 2015).

The Code of Criminal Procedure also allows victims of the crimes of continuous sexual abuse of a young child, indecency with a child, sexual assault, aggravated sexual assault, stalking, trafficking of persons, continuous trafficking of persons, or compelling prostitution to obtain protective orders under a separate procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 7A.01(a)(1)-(2)(West Supp. 2015)(listing eligibility requirements and predicate crimes). No prior relationship between an assailant and victim is required to obtain a protective order under

4

the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 7A.01(a). If, after the close of the protective order hearing, the court finds that "there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking[,]" then "the court shall issue a protective order that includes a statement of the required findings." TEX.CODE CRIM.PROC.ANN. art. 7A.03(a)-(b)(West 2015). No additional showings beyond status as a crime victim are required to obtain the order.[2] A protective order issued under this article may last "for the duration of the lives of the offender and victim or for any shorter period stated in the order." TEX.CODE CRIM.PROC.ANN. art. 7A.07(a)(West 2015).

Once a final order is issued, the circumstances under which the order may be rescinded differ under the Family Code and the Code of Criminal Procedure. The Family Code allows either the original applicant or the person subject to the protective order to move the issuing court to reconsider the continuing need for a protective order after one year. TEX.FAM.CODE ANN. § 85.025(b)(West Supp. 2015). By contrast, when a protective order is issued under the Code of Criminal Procedure in response to a sexual assault, the trial court may only rescind the order upon the victim's request, which may be made at any time. TEX.CODE CRIM.PROC.ANN. art. 7A.07(b). Although the protective order mechanisms in the Family Code and the Code of Criminal Procedure should be read in harmony with one another, TEX.CODE CRIM.PROC.ANN.

---

[2] Previously, an applicant under this procedure had to also prove reasonable fear of further harm from the alleged assailant. *See Garcia v. Tautenhahn*, 314 S.W.3d 541, 546 (Tex.App.--Corpus Christi 2010, no pet.)(upholding denial of protective order where victim failed to prove as a matter of law that alleged rapist, who wished to have visitation rights to their child, posed an objectively reasonable continuing threat to her). The Legislature abrogated the fear of further harm requirement in 2011. *See* Act of Sept. 1, 2011, 82nd Leg., R.S., ch. 238, § 1, 2011 TEX.GEN.LAWS 820, 820-21. In the Senate Committee on Criminal Justice's bill analysis, the authors of the bill stated that they were proposing this change in direct response to the Thirteenth Court of Appeals' opinion, and that:

> The requirement of a threat of further harm thwarts the original purpose of the sexual assault protective order statute by denying relief to some victims who fear continued emotional abuse from their assailant. H.B. 649 allows protective orders for victims of sexual assault without requiring the victim to show a threat of future harm by the assailant.

Senate Research Ctr., Bill Analysis, Tex.H.B. 649, 82nd Leg., R.S. (2011).

art. 7A.04 (West 2015)(tying Family Code Title 4 to Criminal Procedure Code Article 7A), a subsection of Article 7A specifically states that to the extent the order rescindment provisions of the Family Code and the Code of Criminal Procedures conflict, the Code of Criminal Procedure takes precedence. TEX.CODE CRIM.PROC.ANN. art. 7A.07(d).

The parties on appeal operate under the assumption that the Family Code procedure provides Swearingen with standing to challenge this order. However, the Code of Criminal Procedure specifically states that for protective orders issued on sexual abuse grounds, only the victim who requests and receives an order can petition to have the order rescinded. Unlike the Family Code's rescindment provisions, the Code of Criminal Procedure makes no mention of the subject's right to challenge the protective order. This omission is significant; we cannot ignore it. "We presume the legislature chooses a statute's language with care, deciding to purposefully include or omit words." *In re O.R.T.*, 414 S.W.3d 330, 334 (Tex.App.--El Paso 2013, no pet.). Here, we take the inclusion of only victims as and failure to include offenders as "persons [who] may file at any time an application with the court to rescind the protective order" under TEX.CODE CRIM.PROC.ANN. art. 7A.07(b)'s protective order rescindment provisions as proof that the Legislature intended for orders in cases like this to be rescinded before expiration only upon a *victim's* request. We are bolstered in our conclusion that Legislature intended to prevent the subjects of these orders from challenging them by the fact that Article 7A.07(d) specifically references and supersedes TEX.FAM.CODE ANN. § 85.025, which in turn explicitly permits "[a] person who is the subject of a protective order" to move to rescind the order after one year. *See* TEX.FAM.CODE ANN. § 85.025(b).

We understand and appreciate the trial court's attempt to resolve the dilemma presented by this case, where the protective order aimed at shielding R.M. from Swearingen had the

6

unintended consequence of ostensibly preventing Swearingen from applying for a job transfer out of Alpine and out of R.M.'s life. Even so, as we read the statute, Swearingen had no standing to challenge the order once it became final. Because the final order here invoked both the Family Code and Code of Criminal Procedure grounds, because the Code of Criminal Procedure permits only victims and not offenders to petition for rescindment of the order, and because the Code of Criminal Procedure provisions take precedence over the Family Code's rescindment provisions, *see* TEX.CODE CRIM.PROC.ANN. art. 7A.07(d), we find that under the article's plain language, only R.M. could have moved to rescind the order prior to its expiration. The trial court erred *ab initio* by entertaining Swearingen's request for modification.

Issue One is sustained. Because we determine that Swearingen did not have standing to challenge the order, we decline to address Issue Two—whether the trial court correctly found there was no continuing need for the protective order—as unnecessary to the resolution of this appeal. *See* TEX.R.APP.P. 47.1.

The judgment of the trial court is reversed, and we render judgment reinstating the protective order.


August 5, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.