# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00840-CV

---

**Ram Kris Netaji, Appellant**

**v.**

**Vicki Roberts, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CV-17-005584, THE HONORABLE BOB PERKINS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Ram Kris Netaji challenges a lifetime protective order entered against him and for the protection of Vicki Roberts and her family under Chapter 7A of the Texas Code of Criminal Procedure, which authorizes a trial court to issue a protective order for someone that the trial court has reasonable grounds to believe is the victim of stalking.[1]  Roberts filed for the protective order on June 9, 2017, in response to Netaji's conduct from 2013 to 2017.  After an evidentiary

---

[1] The Legislature repealed Chapter 7A in 2019 as part of a nonsubstantive revision of the Code of Criminal Procedure.  *See* Act of May 10, 2011, 82d Leg., R.S., ch. 135, §§ 2, 4, arts. 7A.01(a) (authorizing application for protective order from victim of certain offenses), .03(a)(2)-(b) (authorizing issuance of protective order when trial court finds reasonable grounds to believe that applicant is victim of stalking), 2011 Tex. Gen. Laws 640, 640-41, *repealed by* Act of May 21, 2019, 86th Leg., R.S., ch. 469, § 3.01(2), 2019 Tex. Gen. Laws 1069, 1151.  Effective January 1, 2021, Chapter 7A was recodified as Chapter 7B.  *See* Act of May 21, 2019, 86th Leg., R.S., ch. 469 §§ 1.02, 4.03, 2019 Tex. Gen. Laws 1069, 1066, 1152.  We will refer to the provisions of chapter 7A in effect when the trial court issued the protective order against Netaji.

hearing, the trial court signed the protective order prohibiting Netaji from, among other things, possessing a firearm or ammunition and living in a household where those items are present.[2]

In seven issues, Netaji contends that the trial court erred by issuing a protective order that he alleges imposes unconstitutional restrictions on his rights to freedom of speech and to possess a firearm. Specifically, he contends that:

- the stalking statute was declared unconstitutional in 1996 by the Court of Criminal Appeals;

- the stalking statute is facially unconstitutional;

- the protective order is an unconstitutional prior restraint on his speech;

- the stalking statute is unconstitutional as applied to him because his comments were not threatening, assaultive, or violent;

- his repeated comments on a business Facebook page are not stalking as a matter of law and were insufficient for issuance of the protective order;

- inadmissible hearsay affected the outcome of the proceeding; and

- Chapter 7A of the Code of Criminal Procedure violates his right to possess a firearm in his home.

We will affirm the trial court's protective order.

---

[2] Before the protective-order hearing, Netaji filed a habeas corpus application and motion to quash raising a facial challenge to the constitutionality of the stalking statute. He renewed those constitutional challenges during the protective-order hearing. The trial court denied habeas relief when it issued the protective order on October 11, 2019. Only the protective order, not the ruling on the habeas application or motion to quash, is referenced in "Respondent's Notice of Appeal." Even so, we address the constitutional challenges to the stalking statute in our review of the protective order.

# BACKGROUND

Evidence presented to the trial court during the protective-order application hearing showed that Netaji's conduct toward Roberts and her family had continued for years, beginning in 2013 when Netaji became upset about the payment for his requested reprogramming of several vehicle keys at a Lexus dealership that Roberts owned. Netaji frightened employees and customers at the dealership when he began pacing, going down a hallway speaking to different people, screaming profanities, and spitting on a cashier while speaking to her.[3] After his outburst, Roberts banned Netaji from the dealership.

Using multiple aliases and fake accounts that law enforcement later linked to Netaji by IP address,[4] Netaji subsequently made 301 posts to Facebook sites for the dealership, for charitable and community organizations in which Roberts and her 82-year-old mother volunteered, and for businesses owned by Roberts's daughter-in-law or the daughter-in-law's family. The posts consisted of repetitive statements that Roberts—who had no criminal history—belonged on a sex-offender registry and allowed her stepson and others to "[b]ully, [h]arass, and assault a young disabled [c]ustomer." These posts also said, "For a company that is involved with helping abused children they should be ashamed. They have no business being involved with any children. They all belong in a maximum[-]security prison." Roberts testified

---

[3] Netaji's counsel acknowledges that Netaji has mental-health issues and notes that initially, Netaji could not accept service of the protective-order application because he was receiving inpatient mental-health treatment. The clerk's record reflects that Netaji's address for service of the protective-order application was at the "Meninger Clinic" in Houston, Texas.

[4] An IP address, or Internet-protocol address, is "[t]he 10-digit identification tag used by computers to locate specific websites." *Internet-protocol address*, Black's Law Dictionary (11th ed. 2019).

at the protective-order hearing that Netaji's posts also accused her mother, a founder of the Center for Child Protection, of being a child molester.

In other posts to the dealership Facebook site, Netaji made these comments about Roberts and her daughter, A.A.[5]:

- GO F[—] YOURSELF AND YOUR SHRIVELED UP P[—]. YOU LOOK LIKE A TRANSEXUAL WITH YOUR HAIRCUT AND SMELL LIKE A SEWER. NO WONDER YOU WENT THRU 3 DIFFERENT HUSBANDS.

- [A.A.] OWNERS DAUGHTER F[—] FORMER SALESMAN . . . THE BIG FAT B[—] HAS TO F[—] A SALESMAN MAYBE SHE MOVING ON TO THE PORTERS NOW.

- VICKI ROBERTS LOOKS LIKE A TRANSEXUAL. MOST MEN HAVE MORE HAIR THAN HER . . . PROSTITUTES HAVE F[—] LESS MEN THAN SHE HAS.

- VICKI ROBERTS IN MY OPINION IS A W[—]. LOOKS LIKE A TRANSEXUAL. HER DAUGHTER F[—] A SALESMAN. THEY PULL OFF THE SHOWROOM FLOOR.[6]

Netaji also made other postings about A.A. Roberts testified that in those posts, Netaji noted when A.A. had gained or lost weight, what she was wearing, where she was, and whom she was dating. After Netaji posted that he was at the university that A.A. was attending, A.A. became scared and moved back home. Netaji also posted to the Facebook site for A.A.'s employer, stating that A.A. was "like the Columbine killers" and a threat to employees and customers while working there.

---

[5] We use initials when referring to a family member protected by the stalking order. *See* Tex. Const. art. I, § 30(a) (affording crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process" and "the right to be reasonably protected from the accused throughout the criminal justice process").

[6] Capitalization, punctuation, and spelling in original.

In addition to his posts on several Facebook sites, Netaji sent multiple direct communications by Facebook messenger to Roberts and her family members, including A.A. and her friends.[7] Some of Netaji's instant messages to Roberts—sent under an alias linked to him—said, "KARMA IS A BITCH AND YOU ARE GETTING EXACTLY WHAT YOU DESERVE" and "KARMA IS A BITCH. I HOPE YOU REMEMBER THAT."

Netaji's expressed intentions frightened his sister-in-law, who testified at the protective-order hearing about a group text that Netaji sent to her and her husband in which Netaji threatened to commit a mass shooting at the dealership and sent photos of himself "driving on the way" there. The group text—sent after the trial court had issued a temporary order against Netaji—was admitted into evidence, containing these statements:

- I will go drive the car into the dealership showroom . . . And kill someone there;

- Watch and see;

- I will kill them;

- Get a[n] assault rifle and shoot at them 'til[] they are all dead;

- Make it the largest mass shooting in history;

- I will kill as many as I can;

- I'm stopping at Lowe's to buy a[n] axe;

- I decided to just crash into the building; and

- No need for a[n] axe.

---

[7] Netaji also placed multiple calls to A.A.'s boyfriend and his employer, which Roberts said was an effort "to get him fired from his work."

5

A photo of the Lexus of Austin dealership was included above the caption, "I will kill them." The sister-in-law testified that Netaji "sent those scary texts"; that "he was at the location getting ready to do something, so it was scary"; and that she was concerned that Netaji would harm "people in the dealership" and Roberts.

Finally, Roberts testified about two road-rage incidents in 2016 and 2017 while "driving north on 360, which is [her] way to work," in which Netaji confronted her while they were both driving on Highway 360. During those incidents, Roberts saw Netaji driving aggressively behind and beside her vehicle, "boxing [her] around and speeding up and then throwing on his brakes," "riding [her car's] bumper," honking his horn at her, flashing his car's lights, "flipping her off," and appearing to photograph her with his phone. But Roberts explained that she was not fearful about everything Netaji did, such as when he set up Facebook pages called "LexusofAustinSucks" and "LexusofLakewaySucks." Rather, it was

> when he started personalizing it to my daughter and showing who she was dating and the personal comments about my mother and my family and the photos of employees and their daughters. And just it was personal, it took it away from a business complaint and more into, he knows what's happening in our lives. He's watching what we're doing.

Roberts testified that Netaji's conduct continued after he lost a civil suit that he filed against her and despite cease-and-desist letters sent to him. She discussed her fear of Netaji, stating that he knows where she lives, that she is "scared to death," and that she "live[s] in fear daily." She noted that she sold the dealership that had been in her family for three generations because she was losing employees and could not keep them safe. She also feared being unable to protect her daughter if she took over the business: "[T]here's no way I could

6

have her . . . there as a sitting duck I just couldn't do it. So we're done. He wins." Because of Netaji, Roberts hired full-time security guards for herself and overnight security for her daughter.

Two weeks after the evidentiary hearing, the trial court heard objections to its proposed protective order. During the latter hearing, Netaji's counsel made an oral request for findings of fact and conclusions of law "under Rule 296 of the Texas Rules of Civil Procedure." *Cf.* Tex. R. Civ. P. 296 (requiring "filed" request for findings of fact and conclusions of law). When findings and conclusions were not entered, Netaji's counsel failed to file any notice of past due findings and conclusions. *See id.* R. 297; *see also Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (noting that party waives right to challenge lack of trial-court findings if party fails to file notice of past-due findings required by Rule 297). On October 11, 2019 the trial court signed the protective order that Netaji appeals here.

## DISCUSSION

Netaji's seven appellate issues involve the intersection of several statutes, including those governing the issuance of protective orders under Chapter 7A and defining the offenses of stalking and harassment. We summarize the applicable legislation below.

**Protective Orders for Stalking Under Chapter 7A**

Chapter 7A of the Code of Criminal Procedure authorizes a trial court to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the trial court finds that the applicant is a victim of certain crimes, including stalking. *See* Tex. Code Crim. Proc. arts. 7A.01(a)(1), .03. Before 2013, subsection 42.072(a) of the Penal Code defined the offense of stalking as committing threatening conduct that causes the victim to fear bodily injury or death for himself, his family member, or his dating partner; or to

7

fear that an offense against the victim's property might occur. *See* Act of May 19, 2011, 82d Leg., R.S., ch. 591, § 1, 2011 Tex. Gen. Laws 1432, 1432, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231. But in September 2013, the Legislature amended subsection 42.072(a), expanding the definition of stalking to its current version, which includes conduct constituting the offense of "harassment" under section 42.07 of the Penal Code.[8] *See* Tex. Penal Code § 42.072(a).

Stalking is committed when a person:

on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 [harassment], or that the actor knows or reasonably should know the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

(C) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:

(A) fear bodily injury or death for himself or herself;

---

[8] The harassment statute in section 42.07 of the Penal Code was amended in 2017 and again in 2021. *See* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws, ___, ___; Act of May 27, 2017, 85th Leg., R.S., ch. 522, §§ 13, 14, 18, 2017 Tex. Gen. Laws 1400, 1407. We refer to the applicable version of the harassment statute in effect before both sets of amendments.

(B) fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;

(C) fear that an offense will be committed against the person's property; or

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

*Id.* Because Netaji's conduct began in December 2013, which was after the effective date of the 2013 amendments to the Penal Code, the current and expanded definition of the offense of stalking—which includes stalking by "harassment"—applies. *See id*. §§ 42.07 (defining offense of harassment), .072(a)(1) (including commission of harassing conduct as one way of committing offense of stalking).

Harassment is committed if,

with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

(2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;

(3) conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

(5) makes a telephone call and intentionally fails to hang up or disengage the connection;

9

(6) knowingly permits a telephone under the person's control to be used by another to commit an offense under this section; or

(7) sends repeated electronic communications[9] in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

*Id.* § 42.07(a).

Before the trial court may issue a Chapter 7A protective order, it must hold a hearing to determine "whether there are reasonable grounds to believe that the applicant is the victim of . . . stalking." Tex. Code Crim. Proc. art. 7A.03(a). The protective order may last for the duration of the lives of the offender and victim, *id.* art. 7A.07, it may apply for the protection of the applicant and the applicant's "family or household" members, *id.*, and—with one exception inapplicable here—prohibit the respondent's possession of a firearm, *id.* art. 7A.05(a)(2)(D). The burden of proof necessary for issuance of a Chapter 7A protective order is preponderance of the evidence. *See Webb v. Schlagal*, 530 S.W.3d 793, 803 (Tex. App.—Eastland 2017, no pet.) (holding that "[a]fter a review of the record and cognizant of the lower 'preponderance of the evidence' standard of proof for a civil case," there was some evidence that respondent engaged in knowing behavior constituting stalking, which provided reasonable grounds for trial court to issue protective order).

---

[9] The applicable version of the harassment statute defines an "[e]lectronic communication" as "a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system," including "a communication initiated by electronic mail, instant message, network call, or facsimile machine"; and "a communication made to a pager." Tex. Penal Code § 42.07(b)(1).

**Constitutionality of Stalking Statute**

In his first three issues, Netaji contends that the stalking statute is unconstitutional on its face, that it is an unconstitutional prior restraint as applied to Netaji's speech, and that it was declared unconstitutional in 1996 by the Court of Criminal Appeals. Netaji specifically contends that the stalking statute is facially unconstitutional because it is vague and overbroad and restricts speech that is protected by the First Amendment of the United States Constitution.[10]

No court has declared the stalking statute involved in this protective order facially unconstitutional. *See* Tex. Penal Code § 42.072. Whether a statute is facially unconstitutional is a question of law subject to de novo review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A facial challenge attacks a statute itself as opposed to a particular application. *Allen v. State*, 614 S.W.3d 736, 740 (Tex. Crim. App. 2019). Ordinarily, a facial challenge to the constitutionality of a statute can succeed only when the challenger shows that the statute is unconstitutional in all of its applications. *Wagner v. State*, 539 S.W.3d 298, 312 (Tex. Crim. App. 2018). "The First Amendment overbreadth doctrine provides an exception to this rule whereby a litigant may succeed in challenging a law that regulates speech if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (internal quotations omitted). Still, "there are substantial social costs created by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct." To avoid having these costs "swallow the social benefits of declaring a law 'overbroad,' [courts] have insisted that a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of

---

[10] Netaji's complaint that the stalking statute also violates article I, section 8 of the Texas Constitution was not included in his trial-court objections to the protective order appealed here and is not preserved for our review. *See* Tex. R. App. P. 33.1(a)(1).

11

the law's plainly legitimate applications," "before applying the 'strong medicine' of overbreadth invalidation. *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003).

In contrast to a facial challenge, a party raising an "as applied" challenge concedes the general constitutionality of the statute but asserts that it is unconstitutional as applied to his particular facts and circumstances. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011).

## A. Facial Constitutionality of Stalking Statute

Netaji's first three issues implicate a former version of the stalking statute addressed in *Long v. State*, and the current version of the stalking statute that, in part, prohibits stalking by harassment. *See* Tex. Penal Code § 42.072(a)(1) (referencing "conduct that constitutes an offense under Section 42.07"); *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). Harassment is an offense that may be committed by sending "repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" with the "intent to harass, annoy, alarm, abuse, torment, or embarrass" the other person. *See* Tex. Penal Code § 42.07(a)(7). Two of our sister courts have held that this language in the harassment statute—not the stalking statute—is unconstitutionally vague and overbroad. *See, e.g.*, *Ex parte Ordonez*, No. 14-19-01005-CR, 2021 Tex. App. LEXIS 519, at *3 (Tex. App.—Houston [14th Dist.] Jan. 26, 2021, pet. filed) (mem. op., not designated for publication); *State v. Chen*, 615 S.W.3d 376, 385 (Tex. App.—Houston [14th Dist.] 2020, pet. filed); *Ex parte Barton*, 586 S.W.3d 573, 585 (Tex. App.—Fort Worth 2019, pet. granted).[11]

---

[11] The majority of our sister courts have rejected these facial challenges to the electronic-communications provision in subsection 42.07(a)(7) and upheld the constitutionality of the harassment statute. *See, e.g.*, *State v. Grohn*, 612 S.W.3d 78, 79-80 (Tex. App.—Beaumont 2020, pet. filed); *Tarkington v. State*, No. 12-19-00078-CR, 2020 Tex. App. LEXIS 2254, at

12

Netaji relies heavily on a case from one of those courts, *Ex parte Barton*, as support for his vagueness and overbreadth complaints about the face of the stalking statute, specifically with reference to stalking by harassment and to communications that are reasonably likely to "harass, annoy, alarm, abuse, torment, or embarrass another."[12]  *See* Tex. Penal Code §§ 42.07(a)(7), .072(a)(1).  *Barton* held that the "electronic communications" portion of the harassment statute is vague and overbroad because whether a communication is "annoying or offensive" is a "highly subjective inquiry" that "will differ greatly from person to person."  *Id.* at 585.  In reaching their holding that the harassment statute is unconstitutional, the court noted that the harassment statute does not include a reasonable-person standard "sufficient to cure the failure of the subsection to specify whose sensitivities were offended."  *Id.* at 583.  The Court of Criminal Appeals granted a petition for discretionary review in *Barton* and submitted the case without argument on March 18, 2020.  *See Ex parte Barton*, No. PD-1123-19.

---

*8-9 (Tex. App.—Tyler Mar. 18, 2020, no pet.) (mem. op., not designated for publication); *Ex parte Sanders*, No. 07-18-00335-CR, 2019 Tex. App. LEXIS 2813, at *12 (Tex. App.—Amarillo Apr. 8, 2019, pet. granted) (mem. op., not designated for publication); *Ex parte Hinojos*, No. 08-17-00077-CR, 2018 Tex. App. LEXIS 10530, at *13 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd) (op., not designated for publication); *Ex parte Reece*, No. 11-16-00196-CR, 2016 Tex. App. LEXIS 12649, at *6-7 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Lebo v. State*, 474 S.W.3d 402, 407-08 (Tex. App.—San Antonio 2015, pet. ref'd); *Duran v. State*, Nos. 13-11-00205-CR, 13-11-00218-CR, 2012 Tex. App. LEXIS 7110, at *7-8 (Tex. App.—Corpus Christi–Edinburg Aug. 23, 2012, pet. ref'd) (mem. op., not designated for publication).

[12] Netaji also points to an opinion dissenting from the denial of discretionary review in a case presenting a facial challenge to the constitutionality of the harassment statute, *see Ex parte Reece*, 517 S.W.3d 108, 109 (Tex. Crim. App. 2017) (Keller, P.J., dissenting), but it does not represent the views of the majority of the Court.  *See* Tex. R. App. P. 69.1 (providing that if four judges on Court of Criminal Appeals do not vote to grant petition for discretionary review, that petition is refused); *Ex parte McDonald*, 606 S.W.3d 856, 862 (Tex. App.—Austin 2020, pet. filed) (noting that dissent's reasoning in *Reece* was not adopted by majority of Court and that there has been no binding decision declaring subsection 42.07(a)(7) unconstitutional).

However, even if this Chapter 7A protective order had been based on a finding that Netaji committed stalking by harassment, we recently declined to follow *Barton*. *See Ex parte McDonald*, 606 S.W.3d 856, 863 (Tex. App.—Austin 2020, pet. filed). We upheld the harassment statute, reasoning that subsection 42.07(a)(7) prohibits only communications that are unprotected by the First Amendment. *Id.* at 863-64 (rejecting overbreadth and vagueness challenges, concluding that conduct constituting offense is defined with sufficient clarity, and noting that person who violates statute has intent to harm, not intent to engage in legitimate communication of ideas, opinions, or information). *McDonald* followed our prior precedents rejecting constitutional challenges to the harassment statute. *See Ex parte Ogle*, Nos. 03-18-00207-00208-CR, 2018 Tex. App. LEXIS 5955, at *18-19 (Tex. App.—Austin Aug. 1, 2018, pet. ref'd) (mem. op., not designated for publication) (rejecting overbreadth challenge to harassment statute and concluding that "subsection 42.07(a)(7) can reasonably be construed as being directed at people repeatedly using electronic communications to invade the personal privacy of another with the intent to inflict emotional distress"); *Blanchard v. State*, No. 03-16-00014-CR, 2016 Tex. App. LEXIS 5793, at *8 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication) (noting that harassment statute does not include protected speech because it requires that actor engage in communicative conduct with specific intent to harm victims by inflicting some type of emotional distress listed in statute, i.e., to "harass, annoy, alarm, abuse, torment, embarrass, or offend"); *see also Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010) (rejecting constitutional challenge to telephone-harassment statute with similar wording).

Netaji's vagueness and overbreadth complaints about the face of the stalking statute are limited to: (1) the commission of stalking by harassment in subsection 42.072(a)(1),

14

and (2) the provisions in subsection 42.07(a)(7) of the harassment statute about communications that are reasonably likely to "harass, annoy, alarm, abuse, torment, or embarrass another." Although presented as facial challenges to the stalking statute, in substance, these are facial challenges to subsection 42.07(a)(7) of the harassment statute that we considered and rejected in *McDonald*, *Ogle*, and *Blanchard*. *See McDonald*, 606 S.W.3d at 863-64; *Ogle*, 2018 Tex. App. LEXIS 5955, at \*18-19; *Blanchard*, 2016 Tex. App. LEXIS 5793, at \*8; *see also Ex parte Johnston*, No. 09-19-00445-CR, 2021 Tex. App. LEXIS 2792, at \*12-13 (Tex. App.—Beaumont Apr. 14, 2021, no pet.) (mem. op.) (rejecting facial challenge to constitutionality of stalking statute and noting that court had declined to follow *Barton*). We follow our own precedent, set forth in *McDonald*, *Ogle*, and *Blanchard*, concluding that the communications prohibited by subsection 42.07(a)(7) are not the type of legitimate communication protected by the First Amendment. *See McDonald*, 606 S.W.3d at 863-64; *Ogle*, 2018 Tex. App. LEXIS 5955, at \*18-19; *Blanchard*, 2016 Tex. App. LEXIS 5793, at \*8.

To the extent that Netaji also complains of the portion of stalking statute that does not include stalking by harassment, suggesting that it chills "political" speech and prevents a person from "repeatedly expressing his true feelings, emotions or needs," we note that "we do not invalidate a statute for overbreadth merely because it is possible to imagine some unconstitutional applications." *State v. Grohn*, 612 S.W.3d 78, 84 (Tex. App.—Beaumont 2020, pet. filed) (quoting *Ex parte Hinojos*, No. 08-17-00077-CR, 2018 Tex. App. LEXIS 10530, at \*6 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd) (op., not designated for publication). The portion of the stalking statute that does not include the offense of stalking by harassment prohibits the following:

- "knowingly engag[ing] in conduct";

15

- that occurs "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person";

- that "the actor knows or reasonably should know the other person will regard as threatening" either (i) "bodily injury or death for the other person," (ii) "bodily injury or death for a member of the other person's family or household, or for an individual with whom the other person has a dating relationship"; or (iii) that an offense will be committed against the other person's property";

- that "causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property"; and

- that "would cause a reasonable person to fear" either (i) "bodily injury or death for himself or herself," (ii) "bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship" or (iii) fear that an offense will be committed against the person's property.

Tex. Penal Code § 42.072(a); *see Fernandez v. State*, No. 02-18-00483-CR, 2020 Tex. App. LEXIS 1925, at *25 (Tex. App.—Fort Worth Mar. 5, 2020, pet. filed) (mem. op.) (noting that "the stalking statute applies in a much narrower context than the harassment statute").[13]  Given the narrow focus of these provisions, we conclude that the portion of the stalking statute proscribing an offense separate from the offense of stalking by harassment does not reach a "substantial amount" of constitutionally protected conduct when judged in relation to its plainly legitimate sweep, and that application of the "'strong medicine' of overbreadth invalidation" is unwarranted. *See Hicks*, 539 U.S. at 119-20; *Wagner*, 539 S.W.3d at 310.  To the extent that it is raised, we reject the contention that this portion of the stalking statute is facially unconstitutional.

Further, even if the harassment portion of the stalking statute were ruled unconstitutional, the Code Construction Act in the Government Code indicates that the rest of

---

[13]  Netaji has not shown that the "real-world scenarios" in his brief would fall within the prohibitions of the stalking statute independent of the stalking-by-harassment offense.

the stalking statute would remain valid.  *See* Tex. Gov't Code § 311.032(c).  Subsection 311.032(c) of the Government Code instructs that when

> a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

*Id.*  Because the stalking statute does not contain a provision addressing severability or nonseverability and because other provisions of the statute can be given effect without the harassment provision in subsection (a)(1), the remainder of the stalking statute would stand, even if the harassment portion of it were to fail a constitutional challenge.  *See id.*

### B. Constitutionality of Stalking Statute As-Applied to Netaji

Netaji contends that the stalking statute in conjunction with Chapter 7A of the Code of Criminal Procedure create an unconstitutional prior restraint against his speech.  He opines that the protective order in this case is similar to injunctions that were struck for prohibiting speech that was merely defamatory.  *See, e.g.*,  *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014) (invalidating legal recruiter's post-adjudication injunction against his former employer, who had published defamatory statements that recruiter was engaged in kickback scheme, and noting that "defamation alone" is insufficient justification for restraining individual's free-speech right); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (invalidating injunction that prohibited customer from driving his car in community with message painted on all four sides stating that car dealership had sold him "a lemon"); *Ex parte Tucker*, 220 S.W. 75, 76 (Tex. 1920) (invalidating injunction prohibiting union workers from "vilifying, abusing, or using approbrious epithets" against telephone company that employed

17

them). We disagree that the orders issued in those contexts bear similarity to the one that the trial court found necessary here under Chapter 7A.

In *Wagner v. State*, the Court of Criminal Appeals concluded that when a prior history of abusive conduct has been determined by a judge to be good cause for restraining a person's speech towards his victim, "the First Amendment does not prohibit a court from imposing reasonable restrictions on an abuser's speech for the protection of his victim." 539 S.W.3d at 312 (affirming defendant's conviction based on statute criminalizing violation of certain court orders in specific types of cases, including stalking); *see Kinney*, 443 S.W.3d at 95 (noting "significant distinction" between curtailing person's liberty of speech and penalizing person's abuse of that liberty). *Wagner* also concluded that the government's significant need to regulate speech as a means of protecting victims of abuse from further harm outweighs concerns about the possibility that the statute might infringe on constitutionally protected expression. 539 S.W.3d at 312. Here, the trial judge found that there were reasonable grounds to believe that Roberts was the victim of Netaji's stalking and that good cause exists to restrict Netaji's communication toward Roberts. Netaji omits discussion of *Wagner* when complaining that the protective order entered against him for stalking is an unconstitutional prior restraint, and we are unpersuaded that his cited cases compel invalidation of this protective order.

## C.  1996 Invalidation of Harassment Statute in *Long v. State*

Lastly, Netaji's assertion that the Court of Criminal Appeals declared the *stalking* statute unconstitutional with its 1996 holding in *Long* is inaccurate because that case involved the statute prohibiting *harassment*. *See* 931 S.W.2d at 287, 288 (noting that defendant "was convicted under the 'stalking' provision of the 1993 harassment statute" and that his appeal relied primarily on ruling in *Kramer v. State*, 712 F.2d 174, 176 (5th Cir. 1983), which addressed

18

challenge to constitutionality of pre-1983 harassment statute). Moreover, the current stalking statute differs from the provision in the 1993 harassment statute considered in *Long*, which the Court faulted for its lack of a reasonable-person standard, lack of a continuity-of-purpose requirement, and lack of a "more specific mental state" requirement, such as intent "to place the recipient in fear of death or bodily injury." *See id.* at 290, 293; *see also Fernandez*, 2020 Tex. App. LEXIS 1925, at *22 (noting that "the stalking statute is materially different from the section of the harassment statute that this court has declared unconstitutional" in *Barton*).

By contrast, the current version of the stalking statute in section 42.072 contains a "reasonable person" standard in subsection (a)(3); a continuity-of-purpose requirement that references a "same scheme" or "course of conduct" in subsection (a); and a specific mental-state requirement in subsections (a)(1)(A) and (B), stating that the actor engaged in conduct that he knows or reasonably should know the other person will regard as threatening bodily injury or death. *See* Tex. Penal Code § 42.072(a) ("on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person"), *id.* (1)(A), (B) ("engages in conduct that . . . the actor knows or reasonably should know the other person will regard as threatening . . . bodily injury or death for the other person . . . bodily injury or death for a member of the other person's family or household"), (3) ("would cause a reasonable person to fear"). Thus, "the stalking statute applies in a much narrower context than the harassment statute." *Fernandez*, 2020 Tex. App. LEXIS 1925, at *25. Given these significant distinctions, we are unpersuaded that *Long*'s invalidation of a prior version of the harassment statute also invalidates the current version of the stalking statute.

In sum, because the stalking statute does not reach a substantial amount of constitutionally protected conduct, judged in relation to its plainly legitimate sweep, it is not

19

facially unconstitutional.  *See Hicks*, 539 U.S. at 119-20; *Wagner*, 539 S.W.3d at 310.  Further, Netaji's contention that the Chapter 7A protective order is an unconstitutional prior restraint on his speech is unpersuasive because the First Amendment does not prohibit a court from protecting victims from their abusers by placing certain restrictions on the abuser's speech, *see Wagner*, 539 S.W.3d at 312, and the protective order was issued only after the trial court found that there were reasonable grounds to believe that Roberts was the victim of Netaji's stalking and that good cause exists to restrict Netaji's communication toward her.  Finally, Netaji's contention that the stalking statute was declared unconstitutional in 1996 by the Court of Criminal Appeals in *Long* is unpersuasive because *Long* concerned a "stalking provision of the 1993 harassment statute" that is distinct from the current stalking statute applicable here.  *See* Tex. Penal Code § 42.072(a)(1), (3); *Fernandez*, 2020 Tex. App. LEXIS 1925, at *22.  We overrule Netaji's first, second, and third issues.

**Constitutionality of Stalking Statute as Applied to Netaji and Sufficiency of Evidence**

In his fourth and fifth issues, Netaji contends that the stalking and harassment statutes are unconstitutional as applied to his comments—which he says were not threatening, assaultive, or violent—and that his repeated comments on a business Facebook page are not stalking as a matter of law and were insufficient for issuance of the protective order.

Chapter 7A states that a trial court "shall issue a protective order" if it finds that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking."  Tex. Code Crim. Proc. art. 7A.03(a), (b).  The trial court's protective order here includes its finding that "[r]easonable grounds exist to believe that Applicant has been the victim of stalking."  This fact finding is the only one necessary under Chapter 7A for issuance of the order.  *See R.M.*

20

*v. Swearingen*, 510 S.W.3d 630, 633 (Tex. App.—El Paso 2016, no pet.) ("No additional showings beyond status as a crime victim are required to obtain the order."). We review the trial court's ruling on the protective order, containing that fact finding, under the usual factual and legal sufficiency standards.[14] *See L.S. v. Shawn*, No. 13-17-00224-CV, 2018 Tex. App. LEXIS 6933, at \*8 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2018, no pet.) (mem. op.); *Seals v. Wilbourn*, No. 12-17-00208-CV, 2018 Tex. App. LEXIS 1708, at \*2 (Tex. App.—Tyler Mar. 7, 2018, pet. denied) (mem. op.); *Webb*, 530 S.W.3d at 802; *Shoemaker v. State*, 493 S.W.3d 710, 714-15 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards.");

---

[14] When addressing a legal-sufficiency challenge, we consider whether the evidence at the hearing would have enabled "a reasonable and fair-minded fact finder" to reach the ruling under review. *See Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider all the evidence in the light most favorable to the prevailing party, making every reasonable inference in favor of that party, and disregarding contrary evidence unless a reasonable fact finder could not. *See Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018); *City of Keller*, 168 S.W.3d at 827; *Webb v. Schlagal*, 530 S.W.3d 793, 802 (Tex. App.—Eastland 2017, pet. denied). When more than a scintilla of evidence supports the issuance of a protective order, we will overrule the legal-sufficiency issue. *See Webb*, 530 S.W.3d at 802.

When addressing a factual-sufficiency challenge, we must consider and weigh all of the evidence in the record pertinent to that finding, and we may set aside the finding only if we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *see Webb*, 530 S.W.3d at 802. When conducting a factual-sufficiency review, we must not substitute our judgment for that of the fact finder, who "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Webb*, 530 S.W.3d at 802. The fact finder may resolve inconsistencies in the testimony of any witness, *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986), draw inferences from the facts, and choose between conflicting inferences, *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973).

*Eckchum v. State*, No. 03-15-00270-CV, 2016 Tex. App. LEXIS 7096, at *5-6 (Tex. App.—Austin July 7, 2016, no pet.) (mem. op.) (reviewing legal and factual sufficiency of evidence supporting protective order issued for stalking under Chapter 7A).

Our analysis of whether the stalking and harassment statutes are unconstitutional as applied to Netaji, as he notes, "dovetails with a legal sufficiency analysis" concerning whether there was any evidence that his conduct constituted stalking to support issuance of the protective order.[15] Netaji contends that there was "no evidence" that his conduct involved threats of bodily injury or death and that any finding to that effect was "against the weight and preponderance of the evidence as to be clearly wrong and unjust." As support for these contentions, Netaji says that "the bulk" of the evidence at the protective-order hearing consisted of his Facebook comments containing his "complaints" and "opinions"; that the only evidence of a threat was from a group text that was not sent to Roberts; and that he was merely expressing his views about a business. He asserts that the trial court granted a protective order "for a business owner against a dissatisfied customer" and that the basis for the order "was the continued commentary on Facebook." We disagree.

In addition to the 301 Facebook posts using multiple aliases and fake accounts later linked to Netaji—many to charities and organizations that had "nothing to do with the car dealership"—Netaji's conduct over a period of years included direct messages to Roberts and her

---

[15] Netaji complains that the trial court's findings do not "distinguish which manner and means of stalking was committed." But as we have noted, Netaji's counsel failed to follow the proper procedure for obtaining trial-court findings beyond what was already included in the protective order, and any complaint in that regard is waived. *See* Tex. R. Civ. P. 296, 297; *see also Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (noting that party waives right to challenge lack of trial court findings if party fails to file notice of past-due findings required by Rule 297).

family and road-rage incidents. Specifically, Netaji sent instant messages to Roberts telling her that "KARMA IS A BITCH. I HOPE YOU REMEMBER THAT" and "KARMA IS A BITCH AND YOU ARE GETTING EXACTLY WHAT YOU DESERVE."[16] Some of the direct messages and posts occurred after two cease-and-desist letters were sent to Netaji, when he should have reasonably known that his conduct would cause Roberts to fear bodily injury to her or her family or the commission of an offense against her dealership property.

Roberts testified about how Netaji included her daughter as a target of his gestures, how he "was trying to get her fired" from her employer with posts accusing her of being "like the Columbine killers" and a threat to employees and customers. In summary, she said, "He was trying to scare us." That intent was uncontroverted. Roberts testified that Netaji "knows what's happening in our lives. He's watching what we're doing." Roberts also recalled that after Netaji posted that he was at the university that her daughter was attending, her daughter became "scared and she just moved back home."

Other evidence included the road-rage incidents in 2016 and 2017. During those incidents, while "driving north on 360, which is [her] way to work," Roberts saw Netaji driving aggressively behind and beside her vehicle, "boxing [her] around and speeding up and then throwing on his brakes," "riding [her car's] bumper," honking his horn at her, flashing his car's lights, "flipping her off," and appearing to photograph her with his phone. Roberts testified that she was "very very nervous" at the time, and she appeared "fearful" and "upset" when discussing the 2017 road-rage incident with a law-enforcement officer. Roberts testified that "the bar kept escalating" with Netaji, and "so yeah I'm scared to death. I live in fear daily." Roberts also

---

[16] Notably, Netaji omits the last half of these messages when referring to this evidence.

explained that because of Netaji, she hired full-time security guards for herself and overnight security for her daughter.

Considered in the light most favorable to the trial court's ruling, this record shows that the trial court, as a reasonable fact finder, could have found that more than a scintilla of evidence established that Netaji, "on more than one occasion and pursuant to the same scheme or course of conduct" that was "directed specifically at" Roberts, "knowingly engaged in conduct":

- that he knew or reasonably should have known Roberts would regard as threatening bodily injury for her or for a member of her family or household or that an offense would be committed against her dealership property;

- that caused Roberts or a member of her family or household to be placed in fear of bodily injury or in fear that an offense would be committed against her dealership property; and

- that would cause a reasonable person to fear bodily injury for himself or herself or for a member of the person's family or fear that an offense would be committed against the person's property.

*See* Tex. Penal Code § 42.072(a). From this record, we conclude that the trial court had some evidence that Netaji committed the offense of stalking, and that the trial court had reasonable grounds to believe Roberts was a victim of that stalking, which supported issuance of the protective order under Chapter 7A. *See* Tex. Code Crim. Proc. art. 7A.03; Tex. Penal Code § 42.072. Further, after considering and weighing the same evidence in a neutral light under the applicable factual-sufficiency standard, we conclude that the credible evidence supporting the trial court's finding that "[r]easonable grounds exist to believe that Applicant has been the victim of stalking" is not "so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered." *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *see also Webb*, 530 S.W.3d at 802. Accordingly, we conclude

24

that there was legally and factually sufficient evidence to support the trial court's issuance of the protective order against Netaji under Chapter 7A and that the stalking statute as applied to him is constitutional.[17]  We overrule Netaji's fourth and fifth issues.

**Hearsay complaint**

In his sixth issue, Netaji contends that "inadmissible hearsay" affected the outcome of the protective-order proceeding.  He complains about the admission into evidence of the group-text statements, attributed to him by his sister-in-law as a recipient of the group text on her phone, expressing plans to carry out a mass shooting at the dealership.

We review a complaint about the trial court's admission of evidence under an abuse-of-discretion standard.  *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012).  To obtain reversal based on a trial court's ruling admitting evidence, the party must first show that the trial court did in fact commit error.  *See Gee v. Liberty Mut. Fire Ins.*, 765 S.W.2d 394, 396 (Tex. 1989).

Texas Rule of Evidence 802 prohibits hearsay except as provided by statute or other rule prescribed pursuant to statutory authority.  *See* Tex. R. Evid. 802.  Hearsay is defined as a statement, other than one made by the declarant while testifying at the current trial or hearing, that a party offers in evidence to prove the truth of the matter asserted in the statement.

---

[17]  We need not address Netaji's challenge to the sufficiency of the evidence supporting stalking by harassment or the constitutionality of the harassment statute as applied to him because we have upheld the sufficiency of the evidence supporting the other possible stalking finding, which alone provides grounds for a Chapter 7A protective order.  *See Russo v. Bernal*, No. 03-17-00551-CV, 2019 Tex. App. LEXIS 951, at *18 (Tex. App.—Austin Feb. 12, 2019, no pet.) (mem. op.).

25

*Id.* R. 801(d). A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. *Id.* R. 801(e)(2)(A).

Here, the "declarant" in the group texts is Netaji. *See id.* R. 801(b) (defining "declarant" as "the person who made the statement"). The text messages—which offered insight concerning Netaji's intentions toward Roberts, her employees, and her property—were offered at the protective-order hearing against Netaji and contained his own statements in his individual capacity. Thus, the text messages were not "inadmissible hearsay" that the trial court erred by admitting into evidence, but admissions by a party opponent. *See id.* R. 801(e)(2)(A). Because the complained-of evidence was not hearsay, we overrule Netaji's sixth issue.

**Second-Amendment Challenge to Protective-Order Restriction**

In his seventh and final issue, Netaji contends that the firearm-possession restriction in the protective order violates his constitutional right to possess a firearm in his home. He also contends that this alleged violation receives "strict scrutiny" on appeal.

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The Supreme Court has held that a ban on handgun possession in the home for self-defense violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Article 7A.05(a)(2)(D) of the Code of Criminal Procedure authorizes a trial court issuing a chapter 7A protective order to prohibit the alleged offender from possessing a firearm. *See* Tex. Code Crim. Proc. art. 7A.05(a)(2)(D).

26

## A. Intermediate Scrutiny Applies

Texas courts have considered as-applied Second Amendment challenges to the firearm restrictions in Chapter 7A protective orders. *See Kloecker v. Lingard*, No. 01-19-00533-CV, 2021 Tex. App. LEXIS 4069, at *24-26 (Tex. App.—Houston [1st Dist.] May 25, 2021, pet. denied) (mem. op.); *Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 Tex. App. LEXIS 8339, at *16 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.); *Webb*, 530 S.W.3d at 809. As an initial matter, these courts concluded—based on federal cases considering the constitutionality of an analogous federal statute prohibiting firearm possession by individuals subject to domestic protective orders—that chapter 7A does not restrict a "core" Second Amendment right and thus, intermediate-level scrutiny, rather than strict scrutiny, is the proper standard for determining the question of its constitutionality. *Kloecker*, 2021 Tex. App. LEXIS 4069, at *24; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *16; *Webb*, 530 S.W.3d at 809.

These courts noted that the "core" Second Amendment right identified in *Heller* is that of a "law-abiding, responsible citizen" to possess and carry a firearm for self-defense. *See* 554 U.S. at 635; *Kloecker*, 2021 Tex. App. LEXIS 4069, at *24; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *19; *Webb*, 530 S.W.3d at 809. But in all three of the Texas cases, the trial courts found reason to believe that the respondents committed the offense of stalking, so none could be regarded as a "law-abiding, responsible citizen." *See Kloecker*, 2021 Tex. App. LEXIS 4069, at *25-26; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *19-20; *Webb*, 530 S.W.3d at 809-10; *see also United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001) ("[I]t is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms.").

The same applies to Netaji here. The trial court found reason to believe that Netaji had engaged in stalking conduct, and thus, he cannot be considered a law-abiding,

27

responsible citizen. Because a core Second Amendment right is not involved in this appeal, we apply intermediate scrutiny, and not strict scrutiny as Netaji contends, in determining whether Chapter 7A's firearm-possession restriction is unconstitutional as applied to him. *See Kloecker*, 2021 Tex. App. LEXIS 4069, at *25-26; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *19-20; *Webb*, 530 S.W.3d at 809-10.

A statute passes intermediate scrutiny if there is a reasonable fit between the challenged statute and a substantial governmental objective. *See Kloecker*, 2021 Tex. App. LEXIS 4069, at *26; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *20; *Webb*, 530 S.W.3d at 809. The objective of Chapter 7A is "to protect victims of various criminal offenses, including stalking, and to allow those victims to seek protection from those who committed the offense." *See Kloecker*, 2021 Tex. App. LEXIS 4069, at *26; *Wargocz*, 2018 Tex. App. LEXIS 8339, at *20; *Webb*, 530 S.W.3d at 809. We agree with our sister courts' conclusions that protecting stalking victims is a substantial governmental objective and further, that "the terms of the statute itself limit the scope of its applicability to cases squarely within chapter 7A's objective." *See Kloecker*, 2021 Tex. App. LEXIS 4069, at *26-28 (noting that trial court can prohibit possession of firearm in protective order only if it finds reasonable grounds to believe that offender committed one of enumerated offenses and only after hearing on protective-order application); *Wargocz*, 2018 Tex. App. LEXIS 8339, at *21-23 (same); *see also* Tex. Code Crim. Proc. art. 7A.03(a), (b), .05(a)(2)(D).

## B. Constitutionality As Applied to Netaji

In determining whether Chapter 7A's firearm-possession restriction is unconstitutional as applied to Netaji, we must consider the evidence presented to the trial court. The record reflects that Netaji had mental-health issues requiring inpatient hospitalization and

28

medication, that he sent instant messages to Roberts telling her that "KARMA IS A BITCH AND YOU ARE GETTING EXACTLY WHAT YOU DESERVE," and that he was involved in two road-rage incidents with Roberts. There was evidence that while a temporary protective order was in effect against him, Netaji threatened to "[g]et a[n] assault rifle and shoot at them 'til[] they are all dead," and "[m]ake it the largest mass shooting in history." His plans to commit the mass shooting at the dealership were sent with photos of the Lexus of Austin dealership and of himself "driving on the way" there. The trial court heard testimony that these messages sparked concern that Netaji would harm "people in the dealership" and Roberts. Roberts testified that Netaji "knows what's happening in our lives," that "[h]e's watching what we're doing," and that he knows where she lives. Roberts described being "scared to death" and "liv[ing] in fear daily." Additionally, she said that because of Netaji, she hired full-time security guards for herself and overnight security for her daughter.

After considering the evidence presented to the trial court and Chapter 7A's objective of protecting victims of stalking by allowing them to seek a protective order against their stalkers, we conclude that Chapter 7A reasonably fits the statute's objectives as applied to Netaji and further, that the firearm-possession restriction authorized by Chapter 7A is not unconstitutional as applied to Netaji. Accordingly, we overrule Netaji's seventh issue.

## CONCLUSION

We affirm the trial court's protective order.

_____

Darlene Byrne, Chief Justice

29

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed:   November 12, 2021